IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| WADE THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  3:02-cv-969-GPM |
| | ) | |
| TWYLA WALTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

This matter has been referred to the Magistrate Judge Donald G. Wilkerson by Chief

United States District Judge G. Patrick Murphy pursuant to 28 U.S.C. § 636(b)(1)(B), Federal

Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the

Motion for Summary Judgment filed by the defendants, Twyla Walton, Marvin Powers, M.D.,

Delight Griswold, Peggy St. Cin, Jane Simmons and Donna Swink, on August 30, 2005 (Doc.

55).   For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary

Judgment  be **DENIED IN PART** and **GRANTED IN PART** and that the court adopt the

following findings of fact and conclusions of law:

FINDINGS OF FACT

COUNT 3 - PEGGY ST. CIN - DELIBERATE INDIFFERENCE

On November 21, 2000, Thomas made a noose out of a sheet and attempted suicide (Doc.

38, p. 10, Doc. 55-3 p. 26 -27).   Thomas was not injured and does not recall why he attempted to

hang himself (Doc. 55-3 p.26- 27).   Correctional officers then took all of Thomas' property out

of his cell (Doc. 38, p. 10).   Subsequently, Thomas became angry and began banging his head on

the cell wall (Doc. 55-3, p. 27).   His head bled but he required no stitches (Doc. 55-3, p. 27-28,

29).  The next day while intermittently banging his head, he discussed with Nurse Peggy St. Cin why no one from the mental health unit was called after his suicide attempt.  (Doc. 55-3 p. 56); (Doc. 38, p.10, Doc. 55-4 p. 55, 56).  At no point during their 15-20 minute conversation, did St. Cin attempt to stop Thomas from banging his head, nor did she ask him to stop banging his head (Doc. 55-4, p. 56, Doc. 38, p. 10, Doc. 65, Exhibit. 1).  Additionally, she did not notify security (Doc. 65, Exhibit. 1).  After that conversation, St. Cin left Thomas' cell and did not return (Doc. 55-4, p. 57).   St. Cin did not treat him nor did he ask her for treatment (Doc. 55-4, p. 58).  "A couple of days later," another nurse noted a bump on his head and gave him ice and Tylenol (Doc.  55-4, p. 57, 58).  During his deposition, Thomas testified that if someone had asked him to stop banging his head, he doubts he would have stopped (Doc. 55-4, p. 58-59).  During that deposition he stated that he only began listening to the staff recently, as of 2003 (Doc. 55-4, p. 59).

### COUNT 5 -TWYLA WALTON AND JANE SIMMONS- FAILURE TO INTERVENE AND DELIBERATE INDIFFERENCE

On December 31, 2000, after a cell extraction Thomas claims[1] he was beaten, maced and dragged down to the nurses station by his hair.  He alleges correctional officers then held his head in a sink full of water, twice, in an attempt to drown him (Doc. 38, p. 11-12, Doc. 55-3, p. 37).  He states that Nurse Tywla Walton failed to intervene when the correctional officers attempted to drown him and then she denied him medical treatment (Doc. 38, p 12, Doc. 55-4, p. 59-60).  He also alleges that Nurse Jane Simmons also denied Thomas treatment for injuries he

---

[1]The Court is not making findings of fact regarding the actions of correctional officers in this Report and Recommendation.   The Court is merely reiterating Thomas' claims in order for the other claims to be viewed in context.  The Court is not reviewing or making findings regarding the Partial Motion for Summary Judgment (Doc. 57) filed on September 1, 2005.

sustained during this incident (Doc. 38, p. 12, Doc. 55-4 p. 59-60).  Thomas testified at his

deposition, that as a result of the incident, he had bruises on his body, side and chest (Doc. 55-4,

p. 59-60).  He also sustained cuts to his wrists and ankles (Doc. 55-4 p.60).  He stated that hair

was pulled out of his scalp and he was humiliated (<u>Id</u>.).   He alleges that on the day of the

incident he was not given Tylenol or ice (<u>Id.</u>).  Thomas testified that he submitted sick slips

regarding his injuries but got no response (Doc. 55-5 p. 61).  Thomas additionally testified that

he verbally asked to see a nurse but did not see a nurse until January 10, 2001 (Doc. 55-5 p. 62).

He stated that he had the same injuries on that date (<u>Id.</u>).

        In his affidavit in  response to defendants' motion for summary judgment, Thomas stated

that because Walton refused him medical treatment and further refused to wash the chemical

agent out of his eyes, that made it possible for the correctional officers to attempt to drown him

in the sink (Doc. 65, Exhibit 10).   Thomas further avers that he suffered from neck pain,

swelling of his ankles and face, bruises all over his body, cuts to his wrists and ankles, lower

back pain, a dent to his right leg above the ankle, and lots of pain (<u>Id.</u>).   Additionally, he avers

that the same day he verbally asked Jane Simmons to pull him out of his cell, look at his injuries

and give him something for the pain, she responded by telling him to fill out a sick call slip (<u>Id.</u>).

 He further avers that during the next several days, he spoke with Simmons on several occasions,

but received no treatment (Doc. 65, Exhibit 12).   Additionally, during that time period, he also

attempted to talk to Walton, but she ignored him (<u>Id.</u>).  Thomas avers that he was in a lot of pain

from December 31, 2000 until January 10, 2001 when he was finally treated (<u>Id.</u>).

        Thomas also attaches the following to his motion in opposition to the defendants' motion

for summary judgment:  Nursing notes by Twlya Walton from December 31, 2000 at 12:45 p.m.

which state  that Thomas' face and head were rinsed under the faucet (Doc. 65, Exhibit 15).  The

notes state that Thomas was argumentative and resisted security and told Walton "to get the f___

away from me." (Id.).  No apparent injuries were noted (Id.).   On that same date and time an

incident report was prepared (Doc. 65, Exhibit 16).  The incident report indicated that Walton

reported that  Thomas refused medical treatment and told her "to get the f___ away from me."

(Id.).

     A grievance filed by Thomas, dated January 6, 2001, alleges that Walton filed the

disciplinary report on him for intimidation and threats because on the day before he told her that

he would spit on her face if he saw her. (Doc. 65, Exhibit 13, Exhibit 14).  The grievance further

stated that Walton was not in the nurses station when he was brought in for treatment (Id.).  That

same grievance stated that Thomas submitted a sick call slip on January 2, 2001 at which time he

had not been seen by a nurse (Id.).  Walton's response to the grievance stated that Thomas would

not allow her to treat him; he was argumentative and cursing (Id.).  She noted no visible injuries

(Id.).

     Nursing notes from January 10, 2001 indicated that Thomas stated that he has had lower

back pain since his cell extraction 11/2 weeks earlier (Doc. 65, Exhibit 12).   The nurse noted

that his movement was somewhat guarded and he was tender to the touch with limited range of

motion (Id.).  The notes further indicated that there was no swelling or bruising (Id.).  Thomas

was given medication and told to apply heat (Id.).

### COUNT 20 - DR. MARVIN POWERS AND DELIGHT GRISWOLD - DELIBERATE INDIFFERENCE

     Thomas contends that the defendants, Dr. Powers and Nurse Practitioner Griswold, were

deliberately indifferent to his "scalp condition" by not providing him treatment or providing him

with inadequate treatment from November 2000 until March 2002.  (Doc. 38, p. 19, Doc. 65, Exhibits 22 - 80).   Thomas' scalp was dry and at times he had hair loss and sores on his scalp (Doc. 55-5, p. 63).   Thomas states in his affidavit that over time his scalp condition deteriorated (Doc. 65, Exhibits 20).

### COUNT 22 - DONNA SWINK - RETALIATION

Thomas alleges that Nurse Donna Swink retaliated against him for filing a grievance against her with the Warden's office on September 18, 2001 by refusing to call him out for a previously  scheduled sick call visit on September 20, 2001.   Defendant Swink cites to Thomas' deposition testimony in support of her motion for summary judgment (Doc. 55, p. 68 -79). Thomas provided an affidavit and exhibits in response (Doc. 65, Exhibits 81 - 98).

In his deposition testimony, Thomas stated that he filed a grievance against defendant Swink before she retaliated against him by denying him a sick call pass on September 20, 2001 (Doc. 55 p. 71, 73).   He further testified that he filed the grievance because Swink came around to dispense medication without a guard (Doc. 55 p. 72).   He alleges that his  medication would not slide through the door and Swink was unable to open the door without a guard being present (Id.).   Thomas was supposed to receive psychotropic medication on that day (Id.).   He filed his grievance because she refused to return and bring the medicine back (Id. p. 72- 73).

Thomas states that on September 20th  he asked Swink if he was on sick call and she responded in the affirmative (Id., p. 74).   On that same day an officer asked Thomas if he was going to sick call and  Thomas told him he was (Id.).   Subsequently, Swink did not call him out for sick call (Id., p. 74, 75).   He alleges that Swink knew he was on sick call because she received the request slip and told him that he was on the list to be seen (Id.).    Thomas' affidavit

and supporting exhibits clarify that he filed the grievance against Swink for refusing to give him

his medication on September 18, 2001 (Doc. 65, Exhibits 81 - 85).  The first grievance dated

September 18, 2001 was received by the Warden's office on September 19, 2001 (Doc. 65,

Exhibit 81, 82).  Thomas filed a second grievance regarding Swink's conduct on September 19,

2001 (Doc. 65, Exhibit 84).

**CONCLUSIONS OF LAW**

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it

is demonstrated "that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Haefling v. United Parcel Service, Inc., 169 F.3d

494, 497 (7th Cir. 1999); Dempsey v. Atchison, Topeka and Santa Fe Railway Company, 16 F.3d

832, 836 (7th Cir. 1994).  The burden is upon the moving party to establish that no material facts

are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved

against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 160, 90 S.Ct. 1598, 1610,

26 L.Ed.2d 142, 155 (1970); Miller v. Borden, Inc., 168 F.3d 308, 312 (7th Cir. 1999).  A fact is

material if it is outcome determinative under applicable law.  Hardin v. S.C. Johnson & Son,

Inc., 167 F.3d 340, 344 (7th Cir. 1999); Smith v. Severn, 129 F.3d 419, 427 (7th Cir. 1997); Estate

of Stevens v. City of Green Bay, 105 F.3d 1169, 1173 (7th Cir. 1997).  Even if the facts are not in

dispute, summary judgment is inappropriate when the information before the Court reveals a

good faith dispute as to inferences to be drawn from those facts.  Plair v. E.J. Brach & Sons,

Incorporated, 105 F.3d 343, 346 (7th Cir. 1997); Lawshe v. Simpson, 16 F.3d 1475, 1478 (7th Cir.

1994); Dempsey, 16 F.3d at 836.  Finally, summary judgment "will not be defeated simply

because motive or intent are involved."  Roger v. Yellow Freight Systems, Inc., 21 F.3d 146, 148

6

(7th Cir. 1994).  *See also* <u>Miller,</u> 168 F.3d at 312; <u>Plair,</u> 105 F.3d at 347; <u>Cf.</u> <u>Hong v. Children's</u> <u>Memorial Hospital</u>, 993 F.2d 1257, 1261 (7th Cir. 1993); <u>Lac Du Flambeau Indians v. Stop</u> <u>Treaty Abuse-Wisconsin, Inc.</u>, 991 F.2d 1249, 1258 (7th Cir. 1993).

In deciding a motion for summary judgment, the trial Court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986)

*See also*: <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986); <u>Haefling</u>, 169 F.3d at 497-98; <u>Sybron Transition Corporation v.</u> <u>Security Insurance Company of Hartford</u>, 107 F.3d 1250, 1255 (7th Cir. 1997); <u>Weinberger v.</u> <u>State of Wisconsin</u>, 105 F.3d 1182, 1188 (7th Cir. 1997).

### DELIBERATE INDIFFERENCE

The Supreme Court has held that the Eighth Amendment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment,  imposes a duty upon states to provide adequate medical care to incarcerated individuals.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976).  The Supreme Court has recognized that "deliberate indifference to serious medical

needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. Id. at 104.   The Eighth Amendment "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . ." Id. at 102 (citations omitted).   The infliction of "unnecessary suffering is inconsistent with contemporary standards of decency . . ." Id. at 103. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." Id. (citations omitted). Indifference can be manifested by intentionally denying or delaying access to medical care. Id. at 105-106   In order to state a claim of cruel and unusual punishment under the Eighth Amendment, a prisoner must allege "'acts and omissions sufficiently harmful to evidence deliberate indifference to serious medical needs,'" Benson v. Cady, 761 F.2d 335, 340 (7th Cir. 1985), *quoting* Estelle 429 U.S. at 106.   "[T]he infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." Duckworth v. Franzen, 780 F. 2d 645, 652-53 (7th Cir. 1985).   Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. Id. at 653; Shockley v. Jones, 823 F.2d 1068, 1072 (7th Cir. 1987).   A 'serious' medical need is one that has been diagnosed by a physician mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Foelker v. Outagamie County, 394 F. 3d 510, 512-513 (7th Cir. 2005)(citations omitted).   In order to have a violation by failing to provide medical care, there must be deliberate indifference to a substantial risk of harm. Sherrod v. Lingle, 223 F.3d 605, 610 (7th Cir. 2000) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994).

A prisoner must satisfy two requirements. First, an objective standard, " the deprivation

alleged must be, objectively, "sufficiently serious," Farmer, 511 U.S. at 834 (citations omitted) and second, a subjective standard,  "only the unnecessary infliction of pain implicates the Eighth Amendment." Id. at 834. (citations omitted)   "[A] prisons official must have a 'sufficiently culpable state of mind." Id.  The official must know of the excessive risk to the inmate's health and disregard it.  Id. at 837.

To defeat defendants' motion for summary judgment, Thomas must adduce evidence from which it can be inferred that he had a serious medical need (objective component) and that prison officials were deliberately indifferent to this need (subjective component).  See Guiterrez v. Peters, 111 F. 3d 1364, 1369 (7th Cir. 1997).

### COUNT 3 - PEGGY ST. CIN

A prison official must know of and disregard an excessive risk to inmate health or safety in order to be found liable under the Eighth Amendment.  Farmer, 511 U.S. at 837.  Whether a prison official actually knew of a substantial risk is a question of fact.  Id. at 842. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that it was obvious." Id.  The Seventh Circuit has recognized that prisoners have a constitutional right "to be protected from self-destructive tendencies,  . . . ." Sanville v. McCaughtry, 266 F.3d 724, 733 (7th Cir. 2001).  (citations omitted).

Thomas argues that St. Cin was deliberately indifferent to his mental health needs when she did nothing to try to prevent him from banging his head on the wall after he had attempted to hang himself less than 24 hours earlier and no one from mental health had been called to see him.

Defendant St. Cin argues that Thomas has no evidence with which to support his claim

and that his own testimony during his deposition defeats his claim.  She further argues that there are  no genuine issue of material fact as to Thomas' claim.  Defendant St. Cin points to Thomas' deposition testimony that St. Cin was not present when he attempted to commit suicide by hanging himself, and that Thomas continued to bang his head after St. Cin left the area.  St. Cin argues that the only injuries Thomas sustained from banging his head were cuts and a bump.  Defendant St. Cin also points to Thomas' deposition testimony that he would probably not have stopped banging his head even if she had asked.  Additionally, St. Cin argues that Thomas' actions were not of a severity which would require her to do anything.

Thomas' affidavit states that St. Cin was present while he was banging his head on the wall and cell door (Doc. 65,  Exhibit 1).   He further avers that she walked off and left him banging his head (Id.).  She did not notify "commanding security personnel" ((Id.).  Other exhibits attached to Thomas' affidavit include the job responsibilities of a registered nurse employed by Wexford Medicine (Doc. 65, Exhibits 2 -5).  The job description states that the nurse is to assess physical and psychological needs.  (Id., p 2).  The nurse is to consult and communicate, when necessary, with other medical people and correctional officers (Id. p. 2 -3).  A nurse is to identify existing and potential problems and take effective action (Id.).

Reviewing the record and drawing all reasonable inferences and resolving factual disputes in favor of Thomas, the Court finds that there are genuine issues of material fact  that exist.  The issue before the Court is whether St. Cin was deliberately indifferent to Thomas' mental health needs.  Applying the standards set out in Farmer, the Court finds that there is a good faith dispute as to what inferences can be drawn from the facts.   The issue is at the time of the incident was what  St. Cin's state of mind and her knowledge of whether Thomas had a

mental illness.  Questions remain as to whether St. Cin had a duty to notify someone.

There are several conclusions a reasonable jury could reach.  A jury could conclude that under these facts St. Cin did nothing wrong.  However, a jury could conclude that St. Cin knew something was wrong but did nothing and that she either recklessly or maliciously allowed him to continue banging his head on the wall.   A jury might conclude that she negligently believed he needed no intervention  from security or a jury could conclude St. Cin intentionally allowed him to suffer.   Because Thomas had tried to hang himself, it would not be unreasonable for a jury to conclude St. Cin should have known that  Thomas was a danger to himself.   For the foregoing reasons this Court **RECOMMENDS** that defendant St. Cin's Motion for Summary Judgment be **DENIED.**

### COUNT 5 -  DEFENDANTS WALTON AND SIMMONS

Defendants' allege that Thomas has no evidence to support his claim and that his own testimony defeats his claim.  Additionally, they argue that there is no genuine issue of material fact as to his claim.  Defendants argue that 1) because Thomas did not know what the nurses could do to treat some of the injuries he sustained and; 2) he did not sustain any infections, therefore, he has no claim because his injuries were not serious.

Thomas, however,  is making two distinct claims.  First, he is claiming that nurse Twyla Walton failed to intervene when the correctional officers attempted to drown him in the sink at the nurses station and, second, that nurse Walton and nurse Jane Simmons refused to provide him medical care and were therefore deliberately indifferent to his serious medical need.

The case law in this circuit is well established that an officer who is present during a beating by a fellow officer can be held liable for failing to intervene.  See  e.g., Byrd v. Brishke,

11

466 F.2d 6, 11 (7th Cir. 1972).  However, this Court could find no authority that requires a medical employee of a prison to intervene or supervise or control the actions of  correctional officers.  There is no evidence before the Court that  nurse Walton had  the authority to intervene with the actions of correctional officers in disciplinary matters.    The 7th Circuit has cited with approval the holding of the 3rd Circuit that "[I]nmate health and safety is promoted by dividing inmate life among guards, administrators, physicians, and so on.  Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain the division of labor."  Johnson v. Doughty, 433 F. 3d 1001, 1011 (7th Cir. 2006); Greeno v. Daley, 414 F. 2d 645, 656 (7th Cir. 2005) (quoting Spruill v. Gillis, 372 F. 3d 218, 236).   In those cases the court found that it would not find correctional officers deliberately indifferent to a prisoner's medical needs when that prisoner was being treated by medical personnel.   Based upon the division of inmate life, it would seem erroneous to find a nurse liable for the alleged actions of correctional officers during a disciplinary matter.   Exhibits provided by Thomas state that nurses are to consult with correctional officers, and document nursing encounters and patient response.  The Exhibits do not indicate that nurses have the authority to interject themselves into a disciplinary issue.  Thomas has brought forth no evidence that a nurse has a duty to intervene in a disciplinary matter.

 Prison officials' conduct demonstrating deliberate indifference to serious medical needs of prisoners constitutes the "'unnecessary and wanton infliction of pain'" and violates the Eighth Amendments' prohibition of cruel and unusual punishment.  To state an Eighth Amendment claim, a prisoner must show that (1) he had a serious medical need, and (2) the defendants were deliberately indifferent to it.  An objectively serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Deliberate indifference entails more than "mere negligence," and requires the prisoner to show that the prison official was subjectively aware of the prisoner's

serious medical needs and disregarded an excessive risk that a lack of treatment
posed to the prisoner's health or safety from lack of treatment.

Wynn v. Southward, 251 F. 3d 588, 593 (7th Cir. 2001) (internal citation omitted).


Liability will not attach where an injury appeared slight, but later turned out to be
serious. Davis v. Jones, 936 F. 2d 971, 972 (7th Cir. 1991). Ignoring a request for medical
treatment can be cruel and unusual punishment "'provided that the illness or injury for which
assistance is sought is sufficiently serious or painful to make the refusal of assistance
uncivilized.'" Gutierrez 111 F. 3d at 1369. (citations omitted). A delay in medical care may be
sufficient for liability. Kelley v. McGinnis, 899 F. 2d 612 (7th Cir. 1990). However, to prove
such a claim the plaintiff must produce medical evidence "'to establish the detrimental effect of
delay in medical treatment.'" Langston v. Peters, 100 F.3d 1235, 1240 (7th Cir. 1996) (quoting
Byerback v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995)).

Although there appears to be a factual dispute regarding what Thomas' injuries were, i.e.,
whether he had bruises and cuts and whether he was refused treatment or he refused to be
treated, the Court finds that those facts are not material in this case as the undisputed facts do not
arise to a serious medical condition. No reasonable person would believe that bruises and cuts
presents a serious medical condition. Thomas has produced no evidence that the delay
contributed to his injuries. For the foregoing reasons, this Court **RECOMMENDS** that
defendant Walton and Simmons' Motion for Summary Judgment be **GRANTED** and that
Judgement should be entered against the plaintiff and in favor of defendants Walton and
Simmons.

13

### COUNT 20 - DEFENDANTS POWERS AND GRISWOLD

A matter of medical judgment, i.e., whether one course of medical treatment is preferable to another, is a question of tort and beyond the scope of the Eighth Amendment.  See Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996).  An inmates disagreement with a doctor's course of treatment in not deliberate indifference.  Id.   An inmate is not entitled to a particular course of treatment if another treatment option is available.  See Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997).

Thomas filled out at least 23 sick call slips regarding his scalp problem.  (Doc. 65, Exhibits 20, 22-80).  He was seen by medical staff (either a nurse or a doctor) each time he filled out a sick call slip (Id., Exhibits 22 - 80).  Often he received treatment and was advised how to control his condition.  (Id., Exhibits 22 - 80).   While he alleges that his condition deteriorated over time, the medical records reflect that his condition did not get progressively worse.  (Id.) The medical records reflect that on the 6 occasions his condition worsened to some degree, he was seen by a doctor.   (Id.).   As a matter of fact, sometimes he only had small amounts of dandruff (Id.)  Most of the time the medical staff noted the absence of sores (Id.).   He received shampoo for his condition (Id.).  Thomas demanded vaseline or grease on several occasions and was unhappy when he did not receive it.  (Doc. 65, Exhibits 36, 56, 57, 59, 61, 63, 64, 66). Thomas was advised on numerous occasions to wash his hair only once per week, not to scratch his scalp and not to braid his hair tightly. (Doc. 65, Exhibits 74, 75).  The tight braids caused redness and caused his scalp to  swell (Id.).   When he was prescribed a different shampoo, T-Gel, he complained that it made his head burn and it was discontinued by the doctor (Doc. 65, Exhibit 62).  The evidence before this Court demonstrates that Thomas repeatedly received

prompt treatment during the period of time he complained about his scalp.   Thomas' scalp

condition does not qualify as a serious medical condition.  It was not life threatening and did not

present a risk of serious impairment.  Although his condition at times caused him some

discomfort, there is no evidence that this discomfort rose to the level of pain and suffering.   The

evidence, in this case, does not support a finding that defendants Powers and Griswold were

deliberately indifferent to Thomas' serious medical needs.   For the forgoing reasons, this Court

**RECOMMENDS** that defendant Powers and Griswolds' Motion for Summary Judgment as to

Count 20 be **GRANTED** and that Judgment be entered against the plaintiff and in favor or

defendants Powers and Griswold.

## COUNT 22 -  RETALIATION

The First Amendment protects an inmates right to file grievances and prison officials

may not retaliate against inmates for exercising that right.  Walker v.Thompson, 288 F.3d 1005

(7th Cir. 2002); DeWalt v. Carter, 224 F.3d 607 (7th Cir. 2000); Babcock v. White, 102 F.3d 267

(7th Cir. 1996); Cain v. Lane, 857 F. 2d 1139 (7th Cir. 1988).

There are two threshold requirements that Thomas must establish to succeed in his

retaliation claim.  One, he engaged in constitutionally protected activity and second, that his

conduct was a substantial or motivating factor behind the alleged retaliatory acts.  See Mt.

Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977).   In

Babcock, the 7th Circuit addressed the allocation of burdens regarding retaliation in a prison

setting.  The case was remanded to the district court with directions, requiring the prison officials

to show that the plaintiff would have remained in the institution where he was even if he had not

filed a grievance.  See  Johnson v. Kingston, 292 F. Supp. 2d 1146, 1157 (W.D. Wisc. 2003)

15

citing <u>Babcock</u> 102 F.3d at 275.   Under <u>Babcock,</u> prison officials can prove that despite the retaliatory motive, they would have taken the same action.  <u>Johnson</u>, 292 F. Supp. at 1157, citing <u>Babcock</u> at 275.  "Therefore, burden shifting in the retaliation context comports with the general rule against excessive judicial involvement in everyday prison management." <u>Id.</u>

Defendant Swink has not come forward with any evidence as to why Thomas was not called out for sick call on September 20, 2001.  Therefore, this Court finds that there is evidence that a retaliatory intent can be inferred.  Furthermore, questions remain open as to whether a retaliatory motive inspired Swink's actions or whether Thomas would not have been called out on September 20th absent his filing his two grievances.  Based on the evidence before the Court, the Court believes that a reasonable jury could find retaliation.  Based on the foregoing this Court **RECOMMENDS**  that defendant Donna Swink's Motion for Summary Judgement regarding Count 22 be **DENIED.**

For the reasons set forth above, it is the **RECOMMENDATION** of this Court that defendants Motion for Summary Judgment (Doc. 55) be **DENIED IN PART** and **GRANTED IN PART**.   More specifically, Defendants' Motion for Summary Judgment is **DENIED** with respect to the following claims: (1) Count 3 against defendant Peggy St.Cin, and (2) Count 22 against defendant Donna Swink.  Defendants' Motion for Summary Judgment is **GRANTED** with respect to the following claims: (1) Count 5 against defendant Twlya Walton (Failure to Intervene and Deliberate Indifference),  (2) Count 5 against defendant Jane Simmons for Deliberate Indifference, and (3) Count 20 against defendants Dr. Marvin Powers and Delight Griswold for Deliberate Indifference.  Judgment should be entered in favor of the defendants and against the plaintiff.  Counts 5 and 20 should be dismissed with prejudice leaving Counts 3 and

22 to proceed to trial.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1, the parties shall have ten (10) days after the service of this Recommendation to file written objections thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.  Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: March 6, 2006.**

**s/ Donald G. Wilkerson**
**DONALD G. WILKERSON**
**United States Magistrate Judge**